Okay, Lavina v. Florida Prepaid College Board. Mr. Schultz. Thank you, Mr. Chief Judge. May it please the Court, Alex Schultz on behalf of the appellants in this case. In the case before Your Honors, the District Court's underlying order mischaracterized the factual allegations of the plaintiff's complaint, and this resulted in the Court applying an apposite precedent from this Court on the proper application of the ex parte young daughter. Let's talk about the question that was sent to you, because I might agree with you that the District Court didn't really understand the inquiry correctly, but I'm not sure that she didn't reach the right result anyway. It seems to me that the only authority that would obligate the Board to pay your clients would be their contract, and therefore, your suit is really a suit for specific performance, which we've held is barred by the Eleventh Amendment. Your Honor, yes, thank you for the question. Happy to go into Tamiami directly. I think, Your Honor, that Tamiami actually shows why in this specific case it doesn't apply here. It's factually distinct, and what I mean by that, for Your Honor, is if we peel back the layers of the Tamiami opinion and we look at the opinions on which Tamiami relied, there were the two Supreme Court cases that predate ex parte young. I call them the Confederate bond cases. There was only one case. It was a Seventh Circuit case, the MSA Realty case that postdated ex parte young that Judge Choflat relied upon in Tamiami. And that case, we would argue, has itself a carve out for the exact type of action that we're bringing here, Your Honor. And I'm reading from the MSA opinion here. It remains the case that federal courts cannot make the state perform an alleged contract or pay out money as damages, except in the few cases in which state officials or employees acting in their individual capacities have been found to have violated the constitutional rights of the plaintiffs. So we believe that's exactly what we're doing here, Your Honor, is we're bringing a claim on that basis where our client's constitutional rights. The only thing that requires the payment of the money is the contract. Well, the contract requires it, but the board here is violating our client's constitutional rights at the same time. And if we look at the connectivity, Your Honor, between our claim, that's what we think distinguishes Tamiami here. Because in the underlying Tamiami opinion, Tamiami went up to this court multiple times. The first time Tamiami went up to this court on the ex parte young issue, this court affirmed the application of ex parte young and held that, yes, this was valid, because the claims there were specifically challenging aspects of the IGRA, the Indian Gaming Regulatory Act. And this court found, yes, that satisfies ex parte young. You are arguing and making the claim that they committed a violation of ex parte young by abusing their rights under this. Subsequent to the remand, Your Honor, the court, the plaintiffs in that case, for reasons unclear, amended their complaint. And in that amendment, they removed the connectivity to the IGRA. So the IGRA references were gone when they amended. And when this court received the case again, the same opinion, on a new complaint, the court found, and this is what we believe to be the dispositive factor, Your Honor, that distinguishes that case. It found that the lack of the references to the IGRA are what causes the complaint to fail under the ex parte young analysis and equate to a request for specific performance, because that, in effect, was exactly what the counts were asking for. They were no longer. Let's talk about the old Supreme Court cases, right? So the old Supreme Court cases like Haygood and Ray Ayers are cases where the argument is like your argument. The contracts clause is being violated here. That's the federal violation. And the Supreme Court said, no, you're asking a federal court to require specific performance of a contract. That's the relief requested. That's barred. What do you say about that? Well, I think, Your Honor, in this case, what we are specifically seeking is prospective relief. Specific performance is prospective, right? No, understood, Your Honor, a very fair point. But I think what ex parte young obviously came after Haygood and Ayers. Ex parte young cites Ayers and says that's different in that case because they were seeking specific performance of a contract in Ayers. So ex parte young incorporates the Ayers rule. Agreed, Your Honor, 100 percent, because ex parte young, given it postdated Ayers and Haygood, did not purport to overrule either one of them, so it created this path to walk down, right, when you have prospective equitable relief to address ongoing harms. But I think, and we just submitted this as a supplemental notice to this court. I mean, in all these cases are where the argument is they're unconstitutionally violating my contract. That's correct, Your Honor, but I think that here. That's your case. Well, I don't think it is, Your Honor. I think it is. Yes, of course we are arguing that there are constitutional violations here that are impacting our rights under the contract. No question, Your Honor. Isn't the remedy that you're seeking for those alleged constitutional violations the performance of the contract as you interpreted it? The remedy, Your Honor, is the injunction prohibiting them from using their rulemaking authority to act in a certain way that deprives us of our constitutional rights. Inconsistently with the contract, right? In the sense that it is inconsistent with the contract, but that can be coterminous, and that is what the Sixth Circuit just this past year recognized in Enfield, right? I mean, in Enfield, this exact issue came up, and the Sixth Circuit there, in a very robust opinion, specifically stated and rejected this notion that simply the existence of a contract that the State is a party to removes a case from Ex parte Young. In fact, the Sixth Circuit said under the defendant's logic, if a State official is violating federal law, the fact that an existing contract also obligates the State to take the same or similar action would effectively immunize the State official from being subject to an Ex parte Young suit. I don't disagree with the Sixth Circuit's analysis there, but I guess I'm not sure that it applies to this case. Can you explain that if you didn't have this contract with the State, how there would be a constitutional violation from what the State has done? Let's assume, for example, let me just give you a specific hypothetical. Let's say that for some reason, one of these contracts was void. So, I don't know, whatever. Somebody was too young when they entered it or whatever. They entered it for like a gambling purpose. And so the contract's void, so the State doesn't have to provide the tuition payments. How has the State violated either the contract's clause or a taking by doing what it's done with respect to that person? I don't think there's a way for me, you know, in all candor, Your Honor, to stand before you and say that... It's totally dependent on the contract. The contract and the property rights therein, Your Honor, of course, underlie our claim. I would not argue to the court otherwise. I don't think I could do so on a credible basis. But I would submit to Your Honor that there is nothing in TAMIAMI based on the cases that are relied upon in our view and how we have pled the claim in this case. I mean, the reason we cited TAMIAMI to you is just for the proposition that it states, okay? I mean, this is obviously not an Indian Gaming Regulatory Act appeal, okay? But TAMIAMI also hearkens back to these sites, decisions like Ayers, which remain good law, which Ex Parte Young itself cited, and I don't see how you get from under it. I think, Your Honor, understanding Your Honor's position, I would simply argue that a rule, that the existence of a state contract that creates property rights, because, again, if we look at the Fifth Circuit's case in Lipscomb, which I think is very instructive for Your Honors here, that involved leases. There were lease agreements that the state entities were a party to. The Fifth Circuit found that an effort by the state to essentially revoke the payment terms, because these entities were paying, since it was from the 1800s, pennies on the dollar, obviously the state had a motivation to try to get them to pay more, and, conversely, try to enact provisions that voided the lease terms. With your limited time, the district court also ruled in the alternative, and you've made a lot of broad statements, which arguably you haven't established either, including the contract. I mean, my understanding from the terms is that your clients were put on notice that the provisions could be amended from time to time, so that means that what you agreed to here, the amount of money, might change. It might be more, it might be less. So that's the contract clause claim. And then the takings, you said very loosely, because of a property interest, but do you have a property interest under the takings clause here? So those two questions. Why isn't the notice that the provisions could change not enough, and what is your property interest then? Your Honor, yes. Taking your first question first on notice, we don't believe that the notice was adequate for the district court to rule as a matter of law at the motion-to-dismiss stage that that triggered the statute of limitations because the notice was never sent, and the district court, in our view, engaged improperly on fact-finding on this and assumed the notice was valid and that our client received it when there was nothing in the record to support that. So that, I think, is the answer to your first question. As to the vested property interest, I think the issue is that our clients purchased this to be guaranteed an amount that is paid in the future. That is a universally recognized property right under this court's precedent and every circuit that I'm aware of. So when the board engaged in its rulemaking authority to effectively change the terms of the contract, in our view, Your Honor, Judge Abudu, it is indistinguishable from Lipscomb, where there the government was looking to retroactively change payment terms. Okay. But we can't get to any of that, you agree, unless we first satisfy ourselves about the jurisdictional issue and that this suit isn't barred by the 11th Amendment? We must travel under Ex Parte Young, Your Honor. But we've got to satisfy ourselves that we can before we can even get to the merits. Agreed. Thank you. Thank you, Your Honor. Mr. Levesque? Don't you wish you had found Tammy Emmey? I do, Your Honor. George Levesque on behalf of the individual board members who are sued in their official capacity and their executive director. We're here on a class action complaint that is really a failed state law breach of contract claim that is masquerading as impairment of contract and a takings claim. Despite the form, the substance seeks to force payment of contractual benefits. The contractual benefit, the value of the tuition differential, was a fee that wasn't in existence at the time that the contracts were entered. And the contracts make very clear that that contract does not cover every particular fee in Section 9.01 of the master contract. It spells that out very clearly. The contract that was attached to the complaint provided that the prepaid college board would pay the basic tuition and registration fees and local fees if they purchased that plan to a student attending a state public university. If they decided to attend a non-public state university, meaning one out of state or a private university, they would pay the same value of those fees to the institution that the student was attending. We believe the Seminole Tribe case is controlling here. That case is very similar in many respects. First, it addressed an attempt to a plea around the Ex Parte Young exception to 11th Amendment immunity. It's not a specific performance case, is it? It is not a specific performance. And it controls this case? I believe it does, Your Honor, because it was a deck action. They were alleging violations of the Indian Commerce Clause and the 14th Amendment. The court found that although they pled certain things, when you look at the essence of what they were seeking, they were seeking something that would require payment by the state of Florida, which is what would happen here if the court were to grant the relief. The Ex Parte Young would ordinarily allow a federal district court to enjoin state officials to conform their behavior to federal law, prospectively. And insofar as the complaint alleges that, I don't think Seminole Tribe helps you very much. But, good news for you, because the nature of the right here depends on a contract and what the relief that prospective enforcement is really doing is enjoining the state officials to give relief under a contract, you have in-ray errors. But I think the district court flatly misunderstood Ex Parte Young. Understood, Your Honor. I think the struggle that we would have, and I would push back a little bit, is there were federal claims that were articulated, at least in terms of the Indian Commerce Clause and the 14th Amendment, that were raised and pled in Seminole Tribe. The problem with Seminole Tribe, as I remember it, is it really was a unique problem of somehow requiring the governor to do certain things that the Supreme Court said that goes too far. But as a general rule, when you plead a federal claim and you're just asking for prospective relief for the state officials to conform their behavior to the requirements of federal law, that's like classic Ex Parte Young, right? Yes, it is, Your Honor. But even the progeny from Ex Parte Young will draw exception. So when you look at Edelman, when you look at Quirin, those were two cases where they said that where the end result is going to result from money payments from the state, and we're not talking about ancillary effects or direct effects that come with compliance with federal law, because here again, as you noted very early on in the argument before, the federal hook is the impairment of the contract claim, the takings claim. Both of those claims are not wholly looking at federal statutes and federal law. The impairment of contract, there's going to be deference to the way the states interpret their contracts for takings. There's going to be the parameters of that are usually going to be defined by state law. So when they've pled that and they've attached a contract and they've referenced Snyder, I think it would be appropriate for the court to consider those issues as to whether they actually have a federal claim that they claim. Well, do you think it's a lot simpler to just look at the Tamiami inquiry? I mean, you keep wanting to bring me back to Judge Bloom's reasoning, which, you know, I thought the magistrate judge had a much sounder understanding about how Ex Parte Young works, okay? But why do you want to fight what is an easy case for you? Fair enough, Your Honor. I am happy to rest on Tamiami for those purposes. Well, can you remind me what the class definition was? Because I thought this was brought as a purported class, and it could be that the representatives who are specifically seeking money that they believe was owed to them might not fit within the Ex Parte Young line of cases. But for someone who hasn't yet realized the money that they invested, why wouldn't the challenge here generally speak to prospective relief? I don't remember the precise phrasing for the class, but I think the concept was they were participants who purchased plans before the 2007 law went into effect and would be attending either an out-of-state school or a private school and were not being paid the value of the tuition differential. Yeah, so all of them would have the specific performance problem. Correct. And a class hasn't been yet certified, right? Correct. And I think when you look at it, the reason why, and this would lead me into the statute of limitations argument as well, the reason why that would have a retroactive effect is, and we're not talking about ongoing future violations, what we're talking about is something where they entered into a contract with specific terms and the effect of this court's ruling, if it were, to find that there's an ongoing, notwithstanding the specific performance issue, but in a vacuum, that would have the effect of rewriting the contractual obligations of the parties. And we think, first of all, that would probably open up a Pandora's box of federal cases where you're second-guessing the state's interpretation of those. But from a pure standpoint of the statute of limitations, everything ties back to that 2007 change. If I understood correctly, they said they had no notice. So how can you have a trigger date when you weren't aware that your rights were being implicated? Your Honor, the laws that are passed every year, I can't use, you know, I didn't know that law was on the books or I didn't know that they made a change in the law. That's not going to be a very effective defense. And for the same reason here, when the legislature created the tuition differential, did not include it in the benefits that would be paid. And on top of that, you have a master contract that says that the contract can be amended from time to time based upon statutory changes and rule changes. And it can be not every fee is included. I think they had adequate notice just as a matter of law because the Board was obligated to pay that. And also, I would point out… A continuing violation, right? I mean, I don't know why we want to go down these roads like statute of limitations. If the tamiami bar means there's no jurisdiction because the 11th Amendment bars the suit, that's really the end of it, right? I agree, Your Honor. If the court finds that the case does not fall within the Ex parte Young exception, there's no reason to go further. But if they… There's no jurisdiction to go further. Correct. No power to go further. Correct. And then for the same reasons, we believe… If the court is inclined to find it, we believe at least from a failure to state a claim, there are certainly defects when you do consider Snider and you do consider the terms of the contract. Your problem is if we found there was jurisdiction, this would be a continuing violation. You might not be able to do anything about what's happened in the past, but at least going forward, every subsequent refusal to make a payment and conform your behavior to federal law would be a new violation, and this would be a timely suit, wouldn't it? If the court were to reach the conclusion that as a matter of federal law… You want to go down this road. Yeah, I was going to say if you reach that conclusion, yes, I think that might be a reasonable conclusion, but… So then the district court would have gotten that wrong because, again, ruling in the alternative, found in your favor, I think, as well, right? Well, I think that… If you're finding a continuing violation that can be addressed that's not specific performance, I think you still have the issue of… And maybe it's the characterization of continuing violation because you're still going to be rewriting the contract. And we think that would have, in effect, a retroactive effect, notwithstanding characterizing it as a continuing violation. We don't want any of the money we were previously at. Your Honor, I think to get there, you would have to at least look at the merits of their pleading and whether they can state a claim. And I understand… The Ex Parte Young exception and what is required to get past that is a much lower bar than what would be required to state a claim upon which relief could be granted, which we do not believe that they've done, if you were ever to get that far, because of Snyder and its interpretation of the contract. And that as a matter of law, they don't have the right that they claim to have. For those reasons, we would certainly request that the… Unless the panel has any more questions. My questions ended minutes ago. We would request the court uphold the court's dismissal based upon Ex Parte Young, and if it should go farther for the other reasons that I've presented here in our briefing. Thank you, Mr. Levesque. Mr. Schultz. Mr. Chief Judge, thank you. Just to follow up on a few points, and I'll continue on my hopefully not Sisyphean task with respect to Tamiami. I don't think that this court can square Tamiami and the expansive reading therein, which, as I think the court would appreciate… What about In re Ers? I mean, In re Ers is obviously a similar vein, right? It's what Tamiami came off of, but I don't think… It was, but I don't think you could reconcile, for example, Lipscomb from the Fifth Circuit with In re Ers. I just don't see how that's possible. I think Lipscomb may just be wrong. I mean, I just read Lipscomb because I had not picked up on that, but it actually doesn't address this issue. It just says, of course, Ex Parte Young allows you to get specific performance of a contract. I'm sorry, Your Honor, I didn't… It says, basically, of course, Ex Parte Young allows you to seek specific performance of a contract. It seems to adopt rules specific, like, in direct opposition to what Tamiami has. Right, but I think, Your Honor… Okay, so we're assuming that Lipscomb is wrongly… I'm not saying we're… Assuming anything, I guess I'm just saying we have Tamiami. You're citing a case from the Fifth Circuit from, I think, 2001, something like that. I don't know that they could just be… They could just have opposite conclusions. It may not be a matter that we have to be consistent with the Fifth Circuit. That's all I'm suggesting. I completely understand, Your Honor. My point was simply that the logic of that case, which involved leases and voiding payment terms, is, we think, indistinguishable from what's happened here. And when we look at the pattern of what's happened here with respect to our specific clients, I think it's important to address some of my colleagues' comments of how this case came to this court. The district court… This was a motion, 12B-6. The district court, in our view, committed multiple errors under the black-letter precedent from this court. And I think that the expansive reading of Tamiami that is proposed here would really contradict what I read to the court from MSA, which we think is a carve-out from that, but also effectively, as I cited in Enfield, immunize the type of conduct at issue here from any federal challenge ever. And if you look at the factual allegations of our complaint, so our clients purchased these plans before the law changed in 2007. They were prohibited by the board from buying a subsequent plan that included the value of this TDF, which they then could have applied. Then later in the future, 2020 and onward, the board began providing refunds under contracts that our clients were prohibited from purchasing. So they wound up paying more money for less benefits than the board later changed under its rulemaking authority. If that type of conduct is immunized from a federal review, and all you have is a state court option to say, well, this is a breach of contract, and the state court says, effectively, to his quote in reference to Snyder, well, the board can amend these contracts however it wants. That runs directly afoul of Ex Parte Young, in our view, because, again, we have a situation where our benefits were taken away in an ex post facto fashion. That is a taking of a property right. Subsequent members, they sort of created almost subclasses of purchasers, were given more benefits through their rulemaking authority, and they want to take the position that, well, there's no remedy in federal court for that. We would submit to your honors that that's exactly what Enfield was addressing in what I read to your honors, and if this obviously winds up being a circuit split, I fully appreciate that, but I think the logic of Enfield on this point is very compelling when it says that, taken to its logical conclusion, a holding that the mere existence of a state contract voids, to steal Mr. Chief Judge's term for these contracts, voids any federal review of conduct that is clearly unconstitutional and a taking under this court's logic and maroon. The problem is it's not just the mere existence of a contract. The obligation here is wholly dependent on the contract. Agreed, your honor, but... So would you really, I mean, and I appreciate that you're wrestling with Tamiami to make it work for you, but let's just say that the decision doesn't. So what would be the reasons why we should follow the Fifth Circuit instead? Well, I think, your honor, it is simply Enfield and the exceptions that I read in the Seventh Circuit case, MSA Realty, that effectively, and forgive, because Ex Parte Young, I think, to Chief Judge's point, carved out an exception from Ayers and Haygood. I would argue that MSA Realty and Enfield in those cases that I've cited, for your honors, carve out an exception within the Tamiami exception, if that makes sense. So they provide a path to walk down, even when there is the existence of a contract, when there is, as we have clearly pled in this case, and the magistrate judge recognized, ongoing violations of constitutional rights. The benefits that we have had here have unquestionably been revoked. Thank you, Mr. Schultz. We understand your case. We're going to be in recess until tomorrow. Thank you, your honors.